UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____    :

LISA WOLMAN,                             :      Honorable Madeline Cox Arleo
                                         :      Civil Action No. 11-1623 (SDW)
        Plaintiff,                       :
                                         :      **REPORT AND RECOMMENDATION**
v.                                       :
                                         :
PETRO TECHNIK, INC.; et al.,             :
                                         :
        Defendants.                      :
_____    :

        This matter comes before the Court upon the motion of plaintiff Lisa Wolman

("plaintiff") to remand the pending civil action to the Superior Court of New Jersey, Law

Division, Bergen County.  (Dkt. No. 17).  Defendants Petrotechnik, Inc., Franklin Fueling

Systems, Ltd. f/k/a Petrotechnik, Ltd., Franklin Electric Co., Inc., and Franklin Fueling Systems,

Inc., Franklin Fueling Systems, Inc. (sometimes collectively "Petrotechnik defendants") and Jeff

Davis oppose the remand motion.  District Judge Wigenton referred plaintiff's remand motion to

me for Report and Recommendation.

        This Court held oral argument on September 12, 2011, and the Court issued a ruling from

the bench on that same date, respectfully recommending that plaintiff's remand motion be denied

based on preemption and, alternatively, based on diversity jurisdiction.  This written opinion

supplements the Court's oral opinion and further sets forth the reasoning of the September 12,

2011 ruling on the record, pursuant to  LOCAL CIVIL RULE 52.1.

I.      **BACKGROUND**

        On October 15, 2010, plaintiff filed this employment discrimination and retaliation action

against all defendants (and fictitious parties), except, Petrotechnik, Inc., in superior court.

Plaintiff alleges that she was discriminated and harassed based on her religion (Jewish), her gender, her age (49), and her illness-disability (depression and other related mental illnesses). She further alleges that defendants retaliated against her and constructively discharged her after she complained of the unlawful conduct.  Plaintiff asserts claims for violations of New Jersey's Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq., and the New Jersey Constitution as well as common law tort claims for negligent hiring, training and supervision of defendant Davis.  It is undisputed that, on its face, the Complaint does not raise any federal law claims.

According to defendants, plaintiff never served the Complaint on any defendant.  Rather, on January 12, 2011, plaintiff filed an Amended Complaint, adding defendant Petrotechnik, Inc. According to defendants, plaintiff served all defendants with copies of the Amended Complaint.

On March 22, 2011, within thirty days of service of the Amended Complaint, Petrotechnik, Ltd. removed the action.  All the other defendants executed individual consent to removal forms on March 22, 2011.  (See Notice of Removal at Exhs. B-E).  Removal is based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331.  Jurisdiction is specifically based on the preemptive force under § 502 of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), because plaintiff has alleged, in part, a denial of and/or interference with ERISA-governed benefits in violation of the NJLAD's anti-retaliation provisions. Defendants alternatively removed based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

## II.   LEGAL STANDARD FOR REMOVAL

As a preliminary matter, a district court has subject matter jurisdiction over state law claims, pursuant to 28 U.S.C. § 1332, if each plaintiff is a citizen from a state different from each

defendant and the amount in controversy exceeds $75,000.  See Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d. Cir. 2002).  Furthermore, a district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331.  A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441.

A party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction.  28 U.S.C. § 1447(c).  A party opposing remand must show that removal was proper.  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991).

The Third Circuit has held that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)).  Thus, in opposing remand based on lack of subject matter jurisdiction, the removing party, here defendants, bear this burden.

III.   **ANALYSIS**

A.   **Federal Question Jurisdiction/ERISA preemption**

Here, the appropriateness of defendants' removal based on federal question jurisdiction turns on whether any of plaintiff's NJLAD, state common law, or state constitutional law claims arise under federal law based on her assertion that defendants interfered with and/or denied plaintiff health, retirement and/or pension benefits.

Typically, the pleading determines whether a complaint is subject to federal law.  The

Supreme Court has stated: "It is long settled law that a cause of action arises under federal law only when plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  The fact that a plaintiff's state law claims may be preempted by federal law is insufficient to confer federal question jurisdiction.  Dawson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 568 (D.N.J. 2001).

However, "in certain circumstances the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule." Id.  Thus, the doctrine of complete preemption permits removal of an action to federal court when: (1) a federal statute wholly displaces a state law cause of action and creates a superseding cause of action, and (2) there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Railroad Labor Executives Ass'n v. Pittsburg & Lake Erie R.R., 858 F. 2d 936, 942 (3d Cir. 1988).  Where complete preemption exists, removal is proper although there is no federal cause of action on the face of the complaint. Rivet v. Regions Bank of L.A., 522 U.S. 470, 475 (1998).  Where the "preemptive force " of federal law "is so powerful as to displace entirely any state cause of action" for the same claim, the state claim "necessarily 'arises under' federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983).  Because the Supreme Court has only invoked the complete preemption doctrine in "extraordinary" cases, this Court must narrowly construe it. Englewood Hosp. and Med. Ctr. v. Aftra Health Fund, 2006 WL 3675261, * 3 (D.N.J. Dec. 12, 2006) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)).

Recognizing the narrow scope of the doctrine, the Third Circuit has examined complete

preemption in the context of ERISA.  See, e.g., Pascack Valley Hospital v. LOCAL 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 402 (3d Cir. 2004).  In Pascack, the Third Circuit established a two-prong test for determining whether ERISA completely preempts a state court claim, and thus the action is removable.  Id. at 396.  The Third Circuit explained there that a case is removable only if "(1) the [plaintiff] [] could have brought its [] claim under § 502(a) [of ERISA], and (2) no other legal duty supports the [plaintiff's] [] claim.  Id. at 400.

Here, there is no dispute that a federal question is not presented on the face of the Amended Complaint.  A plain reading of the Amended Complaint makes clear that plaintiff seeks relief under New Jersey law.  Plaintiff does not seek relief under ERISA or any other federal statute or the United States Constitution.  However, a court may "'look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law.'"  Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273 (3d Cir. 2001) (quoting Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1488 (7th Cir. 1996)).

   1. *Prong One of the* Pascack *Test - Standing Under ERISA*

In her Amended Complaint, plaintiff recites a litany of allegations to support her state law claims:

- She was denied full health benefits as well as retirement and pension plan benefits;

- Defendants unjustifiably altered her work hours and job duties, criticized her work, and gave her excessive work assignments;

- Davis refused to permit plaintiff to leave work early for her child's doctor appointment until her work was completed;

- Davis began to question plaintiff's request for reimbursement expenses;

5

- Davis required plaintiff to travel unnecessarily to perform her work duties;

- Davis refused to reasonably accommodate plaintiff's mental illness and/or diagnosis of breast cancer;

- Unlike her male counterparts, plaintiff was ordered to use accrued vacation time for her children's medical related emergencies protected under New Jersey's Family Leave Act or Federal Family Medical and Leave Act;[1]

- Plaintiff's male colleagues were given more sick leave than her;

- Davis regularly made derogatory comments based on her gender, age and religion, as well as uttered sexually suggestive comments to her;

- Davis tried to compel plaintiff to commit unlawful business practices for Davis' own financial gain; and

- Plaintiff complained internally about Davis' unlawful conduct but her employer took no remedial action.

(See Am. Compl., at ¶¶ 33, 35, 37, 39, 43-84).

As they pertain to the instant motion, the Court highlights the following specific allegations concerning defendants' denial of and/or interference with plaintiff's full health benefits and pension benefits. In her Amended Complaint, plaintiff states that these allegations pertain to all of her causes of action:

- "Plaintiff never has been offered employee stock sharing or a company profit benefits package. Plaintiff has never been put into the pension plan although male employees with equal or less service time have been put into defendant PT's pension system." (Am. Comp. at ¶ 32).

- "Prior to defendant Davis being employed by defendant PT as plaintiff's supervisor, plaintiff received fully funded health insurance." (Am. Comp. at ¶ 33).

---

[1] At oral argument, plaintiff's counsel conceded that she does not assert a claim under the Federal Family Medical Leave Act which would have provided an independent basis for removal under § 1331.

6

- "However, since 6/1/09 defendants have refused to pay plaintiff's increased premiums for plaintiff's health insurance.  Defendant Davis acting on behalf of defendant PT in the scope of his employment blocked plaintiff from receiving full reimbursement for increases in health premiums."  (Am. Comp. at ¶ 34).

- "Defendant PT ignored plaintiff's complaints or defendant PT was walled from actual knowledge of its existence by their designees or assignees that were high level managers and a result of such plaintiff's health benefits were cut and were not reimbursed.  Defendant PT had constructive or actual knowledge as to plaintiff's claims that she was denied full health benefits."  (Am. Comp. at ¶ 35).

- "This [is] [sic] a tangible act that is actionable under the NJLAD as it changed/altered the conditions and privileges of plaintiff's employment in a material way for the worse."  (Am. Comp. at ¶ 36).

Furthermore, as part of her NJLAD gender discrimination claim, plaintiff alleges that her male counterparts "had the ability to get tax advantages and retirement security through investing and receiving contribution from the pension system," and "they had the ability to be reimbursed fully for increases in health insurance costs. ..."  (Id. at ¶ 224).

As part of her state constitution-based due process and equal protection claim, plaintiff alleges that she was denied reimbursement of her increases in health insurance costs and denied entitlement of pension benefits in violation of the equal protection clause of the New Jersey Constitution.  (Id. at ¶¶ 315-316).

As detailed below, based on the foregoing allegations as well as the nature of these NJLAD and constitutional claims, the first prong of the Pascack test is met because plaintiff could have brought these state law claims under ERISA's civil enforcement provisions, specifically § 510.

Section 510 of ERISA makes it unlawful for a person to "discharge, fine, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he

is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140. "The purpose of § 510 is to prevent employers from terminating or harassing employees to prevent them from obtaining ERISA-protected benefits." Pailleret v. Jersey Construction, Inc., Civ. No. 09-1325, 2011 WL 1485402, at * 3 (D.N.J. Apr. 19, 2011) (citing Kowlaski v. L & F Prods., 82 F3d 1283, 1287 (3d Cir. 1996)). Section 510 prevents employers from taking adverse employment actions with a "benefits-defeating motive." Wood v. Prudential Ins. Co., 207 F.3d 674, 677 (3d Cir. 2000) (holding it is unlawful for employer to terminate employee to avoid paying employee benefits). Accordingly, an employer may not intentionally interfere with ERISA-protected rights. To establish a recoverable claim under § 510, a plaintiff must explicitly allege that her employer was motivated by its desire to interfere and/or deny her employee benefits when it discharged, harassed, discriminated, or otherwise took adverse action against the plaintiff. See id.; see also Gravalik v. Continental Can Co., 812 F.2d 834, 851 (3d Cir. 1987).

Section 510 provides that "the provisions of [section 502] of this title shall be applicable in the enforcement of this section." 29 U.S.C. § 1140. Thus, "any state claim that falls within Section 510 is necessarily within Section 502." Wood, 207 F.3d at 676-678 (holding that plaintiff's discrimination claims under NJLAD and the New Jersey constitution, which were subject to § 510 of ERISA based on a benefits-defeating motive, were completely preempted by § 502 of ERISA). In Wood, the Third Circuit, affirming the district court's judgment, found that because the plaintiff's NJLAD claim provided no rationale for the defendant's allegedly discriminatory treatment other than "to avoid paying benefits [to the plaintiff] and his

8

dependents," § 510 completely preempted the plaintiff's NJLAD claim.  Id. at 677-78.

Relying on the Third Circuit's analysis in Wood, here, part of plaintiff's state law discrimination, retaliation, and equal protection claims are based on theories that defendants intentionally denied or interfered with her employee benefits.  Plaintiff specifically alleges that defendants intentionally discriminated against her, retaliated against her, and/or denied her equal protection under the law for the purpose of interfering with her attainment of rights to which she as a participant was entitled under her employer's benefits' plans.  Here, plaintiff does not merely seek the value of her pension, health, and retirement benefits as part of her incidental damages award.  Instead, some of her NJLAD, common law and state constitutional law claims are based on a "benefits-defeating" motive.  As such, her state law claims challenging her denial of and/or interference with health, retirement and pension benefits could have been brought under ERISA's civil-enforcement provisions, specifically ERISA § 510.  See Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 172 (3d Cir. 1997).

All of the cases cited by plaintiff in support of her argument that there is no preemption are inapposite as none of them analyze complete preemption under ERISA.  Instead, the courts analyzed whether the Labor Management Relations Act ("LMRA") or the Railway Labor Act ("RLA") preempts NJLAD and other state law claims.  See, e.g., Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399 (1988) (analyzing LMRA);  Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541, 546-47 (D.N.J. 2004) (analyzing LMRA); Patterson v. Exxon Mobile Corp., 262 F. Supp. 2d 453, 461-62 (D.N.J. 2003) (same); In re Prudential Ins. Co., 924 F. Supp. 627, 644-648 (D.N.J. 1996) (same), rev'd on other grounds, 133 F.3d 225 (3d Cir. 1998); Kube v. New Penn Motor Express, Inc., 865 F. Supp. 221, 230-231 (D.N.J. 1994) (analyzing LMRA and

Motor Carrier Safety Regulations); <u>Maher v. NJ Transit Rail Operations, Inc.</u>, 125 N.J. 455

(D.N.J. 1991) (analyzing RLA).

      2.    *Prong Two of the <u>Pascack</u> Test - Existence of a Legal Duty*
           *Independent of ERISA*

      The Court next considers the second prong of the <u>Pascack</u> test.  Specifically, the issue

turns on whether any legal duty independent of ERISA supports those of plaintiff's state law

claims based on defendants' alleged intent to discriminate, retaliate, and/or violate her equal

protection rights in order to deny and/or interfere with her health insurance, pension and

retirement plan rights.  If such a duty support plaintiff's claims, then they are not completely

preempted.  As detailed below, the Court finds that no such independent legal duty exists, and

thus, the second requirement has been met.

      Under the second prong, if liability under state-law claims "'derives entirely from the

particular rights and obligations established by the [ERISA] benefit plans,'" <u>Engle v. Milton</u>

<u>Hershey School</u>, Civ. No. 06-109, 2007 WL 1365916, at * 5 (M.D. Pa. Jan. 19, 2007) (quoting

<u>Aetna Health Ins. v. Davila</u>, 542 US 200, 213 (2009)), then such claims are completely

preempted, and the action may be removed.  <u>See Engle</u>, 2007 WL 1365916, at * 5.

      Here, plaintiff's claims based on a theory of denial and interference with employee

benefits are ERISA-dependent.  As noted above, plaintiff, in part, is proceeding on the theory

that defendants discriminated, retaliated, and/or violated her rights in order to deny and interfere

with her ERISA protected rights.  <u>See Pailleret</u>, 2011 WL 1485402, at * 9.  Plaintiff's right to

recovery concerning these claims is inextricably intertwined with the interpretation and

application of ERISA plan coverage and benefits.

As both prongs of the <u>Pascack</u> test are met here, this Court is satisfied that plaintiff's

NJLAD, common law and state constitutional claims that are based on a theory that defendants

discriminated, retaliated, and violated her equal protection rights are completely preempted by

section 510 of ERISA.  Thus such claims are necessarily within § 502's civil enforcement

provision.  Accordingly, removal was proper, and so the Court respectfully recommends that

plaintiff's motion to remand based on a lack of federal question jurisdiction be **DENIED**.

As to plaintiff's state law claims based on theories that do not involve ERISA-protected

rights, defendants do not argue, and this Court does not find, that these claims are preempted by

ERISA.  However, the district court has supplemental jurisdiction over such claims under 28

U.S.C. § 1367.  <u>See</u> <u>Joyce</u>, 126 F.3d at 173-74 and n.5.

### B.    Diversity Jurisdiction

Even if this Court were to find that plaintiff's claims are not preempted under ERISA, the

Court would still conclude that removal was proper based on diversity jurisdiction.

Here, there is no dispute that plaintiff's losses exceed the $75,000 jurisdictional amount.

Rather, plaintiff contends that there is no complete diversity between the parties.  As noted

above, it is defendants' burden, as the removing party, to demonstrate complete diversity exists.

It is undisputed that plaintiff is a New Jersey citizen.  According to defendants,

Petrotechnik, Ltd. (now d/b/a Franklin Fueling Systems) is organized under the laws of the

United Kingdom with its principal place of business in Ipswich, Suffolk, United Kingdom.

Defendant Davis is a citizen of Texas.  Defendant Franklin Electric Co., Inc. (misidentified in

complaint as Franklin Electrical Co.) is incorporated in Indiana with a principal place of business

in Bluffton, Indiana.  Defendant Franklin Fueling Systems, Inc. is incorporated in Indiana with a

11

principal place of business in Madison, Wisconsin.  It is undisputed that defendant Petrotechnik, Inc. is incorporated in Delaware.

The parties' dispute focuses on Petrotechnik, Inc.'s principal place of business, if any. According to defendants, Petrotechnik, Inc. is a citizen only of the state of incorporation - Delaware.  In contrast, plaintiff contends that, although Petrotechnik is a Delaware corporation, it has a principal place of business in New Jersey.  As such, there is no diversity between the parties.

In support of her contention, plaintiff asserts that she worked for Petrotechnik, Inc., in a clerical and administrative capacity, at its principal place of business in Cresskill, New Jersey, until it was purchased by defendant Franklin Electrical or by its subsidiary defendant Franklin Fueling Systems, Inc. in September 2010.[2]  (Wolman Cert., at ¶¶ 4-5).  Plaintiff further contends that, while employed with Petrotechnik, the company maintained no other office than the Cresskill, New Jersey location.  (Id. at ¶¶ 5,6).  Her assertion is based, in part, on her viewing of defendant's tax records and other internal corporate filings, which were prepared in Bergen County, New Jersey.  (Id. at ¶¶ 8-9).  Plaintiff also submits one of her paychecks bearing Petrotechnik's Cresskill, New Jersey business address as evidence of its New Jersey based principal place of business.  (Id. at Exh. P-2).

---

[2] There is a factual dispute between the parties as to when plaintiff was terminated.  She refers to a "constructive discharge in the summer of 2010," (Am. Compl., at ¶ 25), while in her certification in support of remand, plaintiff states she worked for Petrotechnik, Inc. until the sale of the company in September 2010.  (Wolman Cert., at ¶ 4).  Yet, plaintiff provides a paycheck issued by Petrotechnik, Inc. on November 4, 2010, showing she was paid for the period beginning October 16, 2010 to October 29, 2010.  (Id. at Exh. P-2).  Defendants all state that she worked for Petrotechnik, Inc. until October 20, 2010.  (Andrew Golding Decl., at ¶ 8).  This dispute, however, is of no moment to the issue of the citizenship of Petrotechnik, Inc.

In opposition to remand, defendants raise two contentions.  First, in January 2011 at the time plaintiff filed the Amended Complaint adding Petrotechnik, Inc., this entity was an inactive corporation, and thus, its state of incorporation is the only relevant place to establish its citizenship.  Second, even if the Court were to consider Petrotechnik's principal place of business for purposes of determining diversity, its principal place of business, until September 3, 2010, was in Texas where defendant Davis, President of the corporation, was located.  Petrotechnik maintained only an administrative office in Cresskill, New Jersey, where plaintiff was employed.

In support of their arguments, defendants submit the declaration of Andrew Golding, Executive Director of defendant Franklin Fueling Systems, Ltd., formerly known as (defendant) Petrotechnik, Ltd.  (Golding Decl., at ¶ 2).  According to Golding, Franklin Fueling is the parent corporation of Petrotechnik, Inc.  (Id. at ¶ 3).

On September, 3, 2010, Petrotechnik, Inc. and its parent company, and co-defendant Petrotechnik, Ltd. were purchased by Coverco SRL, an Italian entity.  Coverco SRL is an indirect subsidiary of defendant Franklin Electric Co., Inc.  (Id. at ¶ 4).  Within days of the closing on the sale of the Petrotechnik entities, defendant Jeff Davis, Petrotechnik, Inc.'s President, was terminated, the business activities of Petrotechnik, Inc. were stopped, and the entity's operational responsibilities were transferred to other entities, including defendant Franklin Fueling.  (Id. at ¶¶ 5-6).  At that time, the corporate officers at Franklin Fueling, located in Madison, Wisconsin, assumed responsibility for decision-making regarding the direction and control of Petrotechnik.  (Id. at ¶ 6).  As plaintiff's position at Petrotechnik's New Jersey administrative office was no longer necessary, on October 20, 2010, plaintiff was terminated.  (Id. at ¶ 8).  Within one week, Franklin Fueling closed Petrotechnik, Inc.'s administrative office in Cresskill, New Jersey.  (Id.

13

at ¶¶ 9, 11).  By the end of 2010, Petrotechnik, Inc. was no longer conducting any business activities in any state.  (Id. at ¶ 10).

For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1).  Plaintiff contends that Petrotechnik, Inc.'s last principal place of business "was" its Cresskill, New Jersey office when she was employed there until the company was sold in September 2010.  Therefore, complete diversity does not exist between the parties. This Court disagrees.

In Midlantic National Bank v. E.F. Hansen, 48 F.3d 693, 696 (3d Cir. 1995), the Third Circuit held that an "'inactive corporation' (that is, a corporation conducting no business activities) has no principal place of business, and is instead a citizen of its state of incorporation only." Midlantic National Bank, 48 F.3d at 696.   The Third Circuit reasoned that it was unnecessary to "strain to locate a principal place of business when no such place in reality exists." Id. See Mennen Co. v. Atlantic Mutual Ins. Co., 147 F.3d 287, 292 (3d Cir. 1998) (Third Circuit reiterated its holding in Midlantic).

Guided by Midlantic, the Court determines that, at the time plaintiff filed the Amended Complaint in January 2011, Petrotechnik, Inc. had ceased all business activities, and thus was an inactive corporation.  (Golding Decl., at ¶10-11)  As such, it had no principal place of business for the purposes of establishing diversity jurisdiction.   When the Amended Complaint was filed, Petrotechnik, Inc. was a citizen only of its state of incorporation, Delaware.  Thus, the Court finds that complete diversity of citizenship existed when the Amended Complaint was filed.

14

Accordingly, defendants properly removed the action based on diversity jurisdiction.[3]

IV.   **CONCLUSION**

Thus, having considered the parties' submissions, having good cause, and for the reasons set forth above and on the record on September 12, 2011, it is respectfully recommended that plaintiff's remand motion be **DENIED**.

The parties have fourteen (14) days from the date hereof to file objections.

*s/Madeline Cox Arleo*
MADELINE COX ARLEO, U.S.M.J.

Dated: September 16, 2011

---

[3]Although it appears that Petrotechnik, Inc. had no principal place of business in New Jersey as of the filing date of the Amended Complaint, the Court does not reach the issue of where Petrotechnik's last place of business was, in light of Midlantic. (See Wolman Cert., at ¶¶ 4-8; Golding Decl., at ¶12)

15